UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VERONICA THOMAS and RICHARD JOHNSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 3:16-1830 |
| RYAN JENKINS, FORD MOTOR COMPANY, and FORD MOTOR CREDIT COMPANY, LLC, | ) Judge Sharp ) ) ) |
| Defendants. | ) |

## MEMORANDUM

In this action that was removed from the Davidson County, Tennessee Circuit Court, the parties have filed several motions. After setting forth a very brief background, the Court will consider the Motions in the order filed.

### I. Background

This case arises out of a two-vehicle crash that occurred on Interstate 65 in Nashville, Tennessee on July 5, 2015. According to the Complaint, Plaintiff Veronica Thomas was driving a 2012 Dodge Journey and Plaintiff Richard Thomas was a passenger in that vehicle when it was struck by another vehicle operated by Defendant Ryan Jenkins. Plaintiffs allege that either Defendant Ford Motor Company or Defendant Ford Motor Credit Company (collectively "Ford") owned the vehicle driven by Mr. Jenkins, and that he was operating the vehicle in the course of business for Ford.

At the time of the collision, Ford was insured under a policy written by American Road Insurance Company (the "Policy"), while Ms. Thomas's vehicle was insured by Allstate. After the

1

crash, Allstate paid $14,405.70 to Ms. Thomas for property damage to the vehicle. Allstate sought reimbursement, but American Road refused to pay, prompting Allstate to initiate an arbitration proceeding against American Road. Allstate procured an arbitration award against American Road for the amount requested.

## II. Motion to Vacate Arbitration Award (Docket No. 22)

Ford's Motion to Vacate is premised on the theory that "the arbitrator exceeded her authority in entering an arbitration award that Ford must pay[.]" This is because, according to Ford, the policy it had with American Road provided for a $3 million dollar deductible which was not exceeded by Allstate's claim (effectively making Ford self-insured) and it did not consent to American Road arbitrating the claim. Ford's arguments fail.

Generally, the validity of an arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. In fact, Ford moves to vacate the award pursuant to 9 U.S.C. § 10(a)(4), which allows a district court to vacate an arbitration award "where the arbitrators exceeded their powers[.]" In doing so, however, Ford neglects to consider the preferatory language to that subsection, which states that the "court in and for the district wherein the award was made may make an order vacating the award *upon the application of any party to the arbitration*." 9 U.S.C. § 10(a) (emphasis added). That is, "'by the express terms of the statute, a nonparty to the arbitration generally has no standing to challenge the award.'" Marshall v. Wells Fargo Advisors, LLC, 2016 WL 4750194, at *1 (11th Cir. Sept. 13, 2016) (citation omitted) (collecting cases). Because "'[a] federal court may set aside an arbitration award under the FAA only upon a finding that certain statutory or judicial grounds are present,'" Uhl v. Komatsu Forklift Co., 512 F.3d 294, 305 (6th Cir. 2008) (citation omitted), and Ford has not shown those grounds to exist, its Motion to Vacate is

2

subject to denial on this basis alone.

The Court recognizes that "[s]ome circuits have specifically held that arbitrators exceed their powers when they determine rights and obligations of individuals who are not parties to the arbitration proceedings," NCR Corp. v. Sac-Co., 43 F.3d 1076, 1080 (6th Cir. 1995), but that has not been shown to be the case here. The arbitrator's "Automobile Decision" (Docket No. 22-3 at 1) by its very language bound American Road, not Ford.

Ford also points to an "Automobile Arbitration Subrogation Agreement" which provides that "[n]o company shall be required, without its written consent, to arbitrate any claim or suit if: (a) it is not a signatory company nor has given written consent . . . or (g) under the insurance policy, settlement can be made only with the insured's consent." (Docket No. 22-4 at 3). This document, however, is unsigned and the Court has know way of knowing who the signatories to the agreement were, let alone whether it was controlling. And if, as "Ford understands . . . American Road and Allstate are parties to the Arbitration Agreement," (Docket No. 23 at 3), the Court simply does not know whether consent to settle was required under the insurance agreement or given.

Ford's Motion to Vacate will be denied.

### III. Motions to Strike (Docket Nos. 26, 27 & 28)

Plaintiffs have filed a separate Motion to Strike certain defenses in the Answers filed by each Defendant. Defendant Ford Motor Credit Company ("FMCC") has filed a memorandum in opposition in which the others join.

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure which specifically contemplates striking "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from pleadings. Fed. R. Civ. P. 12(f). "Motions to strike are viewed with

disfavor and are not frequently granted." Operating Engineers Local 324 Health Care Plan v. G & W Const. Co., 783 F.3d 1045, 1050 (6th Cir. 2015); (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir.1953)). Thus, a motion to strike a defense will be granted only if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Id. Furthermore, "an affirmative defense 'may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives plaintiff fair notice of the nature of the defense.'" Card-Monroe Corp. v. Tuftco Corp., 2015 WL 11109361, at *8 (E.D. Tenn. Aug. 18, 2015) (quoting Davis v. Sun Oil Co., 148 F.3d 606, 614 (6th Cir. 1998)).

With those standards in mind, the Court turns to the specific defense sought to be stricken.

**A. Sudden Emergency Doctrine**

Plaintiffs move to strike any defenses based on the sudden emergency doctrine. They argue that any such defense

> is redundant as the sudden emergency defense is no longer a valid defense in Tennessee, having been subsumed by the adoption of comparative fault. Specifically, the Tennessee Supreme Court in McCall v. Wilder, 913 S.W.2d 150, 157 (Tenn. 1995) held: "the [sudden emergency doctrine] no longer constitutes a defense as a matter of law but, if at issue, must be considered as a factor in the total comparative fault analysis." Further T.P.I. 3.52(4) makes it clear that Sudden Emergency is consumed by comparative fault.

(Docket No. 26-1 at 3, bracket in original).

Even though the sudden emergency doctrine does not constitute a separate defense in a comparative fault analysis, this does not mean that the doctrine cannot be pled as a stand-alone defense. As the Tennessee Court of Appeals recently observed:

> McCall never stated that sudden emergency has no application outside of cases where comparative fault is alleged. . . . For example, assume a case in which the

4

'sudden emergency' without question is not caused by any individual. An example of this would be a seemingly healthy tree falling across the road causing the soon to be defendant driver to swerve suddenly into the path of the soon to be plaintiff driver. The defendant would have no basis to claim comparative fault of the plaintiff or anyone else, but there could be no doubt that there was indeed a 'sudden emergency' that confronted the defendant driver. The adoption of Boshears' position would mean that even in such a case of undeniable sudden emergency, the trier of fact could not consider sudden emergency because the defendant could not and did not allege comparative fault. McCall held that sudden emergency, if applicable, is simply one of many factors to be considered by the trier of fact in determining fault.

Boshears v. Brooks, 2016 WL 3704487, at *5 (Tenn. Ct. App. July 6, 2016).

Here, a situation comparable to the hypothetical in Boshears may seem unlikely, but Ford asserts that witnesses observed a tire laying in the roadway which caused Mr. Jenkins to lose control of the vehicle. Thus, it could be that Defendants may establish that Mr. Jenkins faced a sudden emergency because of the tire, but not establish that Ms. Thomas was at fault for causing the wreck or that an unknown driver was at fault for the tire being in the roadway. Besides, the Federal Rules of Civil Procedure specifically provide that "[a] party may state as many claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

### B. Fault of Third Parties

In its Answer, FMCC raises the following defense:

FMCC asserts that the accident or incident that is the subject matter of the Complaint was caused or brought about by a person or persons (including Plaintiffs and known or unknown third parties, if proven applicable by investigation and discovery) other than FMCC and over whom FMCC had neither control nor the right to control, or resulted from some independent cause, phenomenon or misadventure beyond the control of FMCC and for which FMCC is not liable. FMCC further asserts that Plaintiffs are not entitled to recover damages as set forth in the Complaint because the fault attributable to Veronica Thomas is equal to, or greater than, the percentage of any alleged fault attributable to FMCC, if proven applicable by investigation and discovery. FMCC therefore relies on the defenses of a lack of cause in fact, superseding intervening cause and comparative fault.

(Docket No. 12 at 3). Plaintiffs move to strike this defense on two grounds, neither of which is

5

persuasive.

First, likening Tennessee Rule of Civil Procedure 8.03 to Federal Rule fo Civil Procedure 8(c), Plaintiffs argue that Defendants in this case do "not identify the parties with whom they intend for the jury to compare fault as mandated by Rule 8. Instead, the defense attempts to leave a door open for any unknown party that may come to light as the litigation progresses." (Docket No. 27-1 at 4). Second, Plaintiffs rely on the Sixth Circuit's decision in Free v. Carnesale, 110 F.3d 1227, 1231 (6th Cir. 1997), which discussed Rule 8.03 in the context of a medical malpractice action.

Tennessee Rule 8.03 requires that "'a party shall set forth affirmatively facts in short and plain terms relied upon to constitute comparative fault (including the identify or description of any other alleged tortfeasors.'" Brown v. Wal-Mart Discount Cities, 12 S.W.3d 785, 787 (Tenn. 2000) (quoting Tenn. R. Civ. P. 8.03). However, "[t]he Federal Rules of Civil Procedure . . . control pleading in diversity cases," Evans v. Pearson Enterprises, Inc., 434 F.3d 839, 851 (6th Cir. 2006), and while "'state law defines the nature of defenses . . . [i]n diversity of citizenship actions,'" the "'Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs,'" Roskam Baking Co. v. Lanham Mach. Co., 288 F.3d 895, 901 (6th Cir. 2002)). Rule 8(c)(1) of the Federal Rule of Civil Procedure does not require "the identity or description of any other alleged tortfeasors" that Tenn. Civ. P. 8.03 requires, and, in federal court, "'[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." Lawrence v. Chadot, 182 Fed. App'x 442, 456 (6th Cir. 2006) (citation omitted).

Moreover, and notwithstanding Rule 8.03, Tennessee law appears to leave open the possibility that a defendant may identify a responsible party after the filing of its Answer, so long

as it does so sufficiently in advance of trial to allow plaintiff the opportunity to join the responsible party. This is in keeping with the language in Brown that "Tennessee case law and statutory law both indicate that when pre-trial discovery fails to identify the 'described' comparative tortfeasor alleged in defendant's answer, the defendant should not be allowed to argue, and the trier of fact should not be permitted to make a determination, that a percentage of fault should be attributed to the unidentified nonparty." Id. at 787. The ability of defendant to later specify the alleged comparative tortfeasor is a reading apparently shared by the Tennessee Court of Appeals. See, Bell South Telecomm. v. Young, 2011 WL 2462996, at *3 (Tenn. Ct. App. Oct. 24, 2011) ("The [Brown] Court explained that . . . a mere description of an additional tortfeasor is sufficient during the pleading stage[.]").

Additionally, Defendants argue that Plaintiffs ignore Tennessee law regarding comparative fault of an unknown motorist and specifically Tenn. Code Ann. § 56-7-1201(e), which permits recovery under the uninsured motorist statute where"[t]he existence of the unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle." Whether this statutory provision is even relevant is unclear, but the Court assumes Defendants are not making arguments that have no basis in the law or under the facts.

**C. Release, Waiver and Estoppel**

In their supporting memorandum, Plaintiffs list "several improper affirmative defenses," including the "defense of waiver, release, and estoppel" as set forth in Paragraph 20 of FMCC's Answer. (Docket No. 27-1 at 1-2). However, in the body of the memorandum, Plaintiffs argue that the defense which claims the accident resulted from "some independent cause, phenomenon or misadventure beyond the control of FMCC," (id. at 5), should be stricken. Given this inconsistency,

the Court does not know which defense Plaintiffs want stricken, particularly since their only argument is that the defense is conclusory and irrelevant.

### E. Statute of Limitations and Service of Process

Defendants assert as a defense, "all applicable statute of limitations, including, without limitation, Tenn. Code Ann. § 28-3-104, if proven applicable by investigation and discovery." (Docket No. 12 at 4). FMCC also

> specifically asserts the defense of insufficient service of process. The Tennessee Secretary of State is not FMCC's agent for service of process under Tenn. Code Ann. § 48-15-104(b) because FMCC maintains a registered agent for service of process in the State of Tennessee.

(Id. at 3). Factually these defenses may be unwarranted, but they are not legally insufficient so as to warrant striking and Plaintiffs' Motion will be denied.

Defendants' victory may be hollow and short-lived. It will not take much to determine whether the accident occurred on July 5, 2015 as alleged, and whether the statute of limitations has run. Defendants likely know the answer to that question already. Similarly, Defendant FMCC's claim that is was not properly served is, by now, either true or not true given Plaintiffs assertion that it effected service on FMCC's registered agent, CT Corporation System. While Defendants risk losing affirmative defenses if they are not raised, persisting in non-meritorious claims simply for the sake of argument or to be contrary is unhelpful to all concerned and most particularly to the Court whose resources are limited.

### III. Conclusion

On the basis of the foregoing, Defendant Ford Motor Company's Motion to Vacate Arbitration Award (Docket No. 22) will be denied. Plaintiff's Motions to Strike (Docket No. 26,

27 & 28) will also be denied.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE